IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) C.A. No.: 2:05-2094-PMD |
| Candy C. Logan, Oliver Lynch, Fastino Juan Hernandez, Sherrie Aiken, Charles Aiken, Progressive Casualty Insurance Company and The Automobile Insurance Company of Hartford ("AIC"), | ) **ORDER** ) ) ) ) ) ) |
| Defendants. | ) ) ) |

This matter is before the court upon the following motions: (1) Plaintiff State Farm Mutual Automobile Insurance Company's ("State Farm") motion for summary judgment; (2) Defendant Progressive Casualty Insurance Company's ("Progressive") motion to dismiss, or in the alternative for summary judgment; (3) Defendants Sherrie and Charles Aiken's ("the Aikens") motion for summary judgment; and (4) Defendants Candy C. Logan's ("Logan") and Oliver Lynch's ("Lynch") motion for summary judgment. For the reasons set forth herein, the court grants State Farm's motion for summary judgment, thereby rendering all remaining motions moot.

**BACKGROUND**

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") is an insurance company organized and existing under the laws of a state other than South Carolina with its principal place of business in Bloomington, Illinois. Defendants Candy C. Logan ("Logan"), Oliver Lynch ("Lynch"), Sherrie and Charles Aiken ("the Aikens"), and Fastino Juan Hernandez ("Hernandez") are residents of South Carolina. Defendants Progressive Casualty Insurance

Company ("Progressive") and The Automobile Insurance Company of Hartford ("AIC") are organized and existing under the laws of a state other than South Carolina but are licensed to do and are doing business in South Carolina.[1]

On January 7, 2005, at approximately 11:00 p.m., an automobile accident occurred at the intersection of Ashley Phosphate Road and Cross Country Road in Charleston, South Carolina. Allegedly, Defendant Hernandez caused the accident in issue; Hernandez was driving a vehicle owned by his employer, Lutzen Construction, Inc. ("Lutzen"), and insured by Plaintiff State Farm.[2] Plaintiff asserts that Defendant Hernandez failed to stop at a red light and slammed into the car of Defendant Logan, who was stopped at the red light. Defendant Logan is insured by Defendant AIC for UM and UIM coverage, and at the time of the accident, Defendant Lynch was a passenger in her vehicle. When Hernandez hit Logan's vehicle, the impact pushed Logan's vehicle forward into a vehicle driven by Toni Tittle. This vehicle in turn hit the rear of a vehicle owned by Defendant Charles Aiken and driven by Defendant Sherrie Aiken. The Aikens assert that Defendant Progressive insured this vehicle for UM and UIM coverage.[3]

As previously mentioned, at the time of the accident, Defendant Hernandez was driving a vehicle owned by his employer, Lutzen. On the date of the accident, Hernandez finished working on a project in the Ladson area at some time between 6:30 and 7:30 p.m. According to Hernandez's

---

[1] On December 27, 2005, the court granted dismissal of Defendant AIC with prejudice.

[2] Lutzen maintained a policy with State Farm at the time of the accident. Endorsement 6030e.1 to the State Farm policy defines "Who is an Insured" to include "any person while using your car . . . if its use is within the scope of consent of you . . . ."

[3] Defendant Progressive has filed a motion to dismiss or in the alternative for summary judgment, asserting that it did not provide any insurance coverage that is potentially applicable to this lawsuit. Plaintiff has not opposed this motion to dismiss.

deposition, the worksite was approximately three or four miles away from his home. However, rather than returning directly home, Hernandez drove fellow employees Nicholas, Roberto, and Placido home. When Hernandez arrived at Placido's home, instead of dropping him off and continuing on his way, Hernandez remained there with the others for a couple of hours and drank some beer before getting back in the Lutzen vehicle to drive home. According to Plaintiff, supervisors at Lutzen had informed Hernandez that he was to use the company vehicle only for company business and to drive it only as transportation to and from work.

Ultimately, it is clear from the record that Lutzen permitted Hernandez to drive the vehicle to and from work and to pick up and drop off fellow employees on his way to and from work when necessary. However, Plaintiff asserts that it was against Lutzen's rules for Hernandez to use the vehicle for personal use and that it also was against Lutzen's rules for Hernandez to consume alcohol before using the vehicle for any reason. Plaintiff states that Hernandez understood that when he stopped at Placido's and drank beer that "his use of the vehicle changed as he was now on his personal time." (Pl.'s Mot. at 2.)

As a result of the accident on January 7, 2005, Defendants Logan, Lynch, and the Aikens filed suit against Hernandez and Lutzen in state court. Thereafter, on July 22, 2005, Plaintiff State Farm filed this declaratory judgment action seeking a declaration that it is not required to provide coverage for any claims arising out the accident because Hernandez was using Lutzen's vehicle outside the scope of Lutzen's consent.

Plaintiff State Farm filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In its motion, Plaintiff seeks an Order that Hernandez was not covered under the omnibus clause of State Farm's policy insuring his employer at the time of the accident.

Shortly thereafter, Defendant Progressive filed a motion to dismiss, or in the alternative for summary judgment, on the grounds that Progressive has no stake in this litigation because it does not insure any of the individuals involved in the accident in issue. Additionally, the Aikens filed a motion for summary judgment, and Defendants Logan and Lynch filed a motion for summary judgment. The Aikens, Logan, and Lynch all assert that Hernandez was operating the vehicle within Lutzen's express or implied consent and therefore within the omnibus clause in the State Farm policy issued to Lutzen.

## STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.' " *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a

4

disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## DISCUSSION

"A declaratory judgment action to determine the coverage under an insurance policy's omnibus clause is an action at law." *United States Fire Ins. Co. v. Macloskie*, 320 S.C. 459, 462, 465 S.E.2d 759, 760 (S.C. Ct. App. 1996) (citations omitted). The party seeking coverage under the omnibus clause of an insurance policy bears the burden of proof. *See Rakestraw v. Allstate Ins. Co.*, 238 S.C. 217, 224, 119 S.E.2d 746, 749 (S.C. 1961) (citations omitted) ("The burden of proving coverage under the omnibus clause of an insurance policy is upon the person seeking coverage."). Nevertheless, before someone using an "automobile becomes an additional insured under the omnibus clause, permission must be expressly or impliedly given for that use." *Id*. at 226, 119 S.E.2d at 751. Additionally, "[p]ermission to use a covered vehicle for a particular purpose does not imply permission to use it for all purposes." *Crenshaw v. Harleysville Mut. Cas. Co.*, 246 S.C. 549, 552, 144 S.E.2d 810, 811 (S.C. 1965) (citing *Rakestraw*, 238 S.C. 217, 119 S.E.2d 746 and *Eagle Fire Co. of New York v. Mullin*, 238 S.C. 272, 120 S.E.2d 1 (S.C. 1961)).

In South Carolina, courts employ the "conversion" or "strict construction" rule when determining how far a permittee may deviate from the grant of permission and still be covered under a policy's omnibus clause. *Mackloskie*, 320 S.C. at 465, 465 S.E.2d at 763.[4] Pursuant to this

---

[4] There are three different approaches for determining how far a permittee may deviate from the grant of permission and still be covered: (1) the "hell or high water" rule, where once an authorized insured grants initial permission to a permittee, the permittee is covered regardless of how grossly he or she deviates from the terms of the permission granted; (2) the "minor deviation" rule, where material deviations from the scope of permission are not covered but slight deviations are; and (3) the "conversion" rule, where the vehicle must be used within the scope of the permission granted. *See Mackloskie*, 320 S.C. at 465, 465 S.E.2d at 763.

5

approach, the permittee must use the vehicle strictly within the scope of the permission granted. *See, e.g.*, *Rakestraw*, 238 S.C. 217, 119 S.E.2d at 748 ("[B]efore the person using the automobile becomes an additional insured under the omnibus clause, permission must be expressly or impliedly given *for that use*.") (emphasis added). "[W]hether the permission be expressly granted or impliedly confirmed, it must originate in the language or the conduct of the named insured or of someone having authority to bind her in that respect." *Rakestraw*, 238 S.C. at 223, 119 S.E.2d at 748; *see also Crenshaw*, 246 S.C. at 553-54, 144 S.E.2d at 812 ("Permitted use of a motor vehicle, which will extend coverage of a liability policy under the omnibus clause, must originate in the language or the conduct of the named insured or of someone having authority from him to extend such permission.").

"Express consent 'must be of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference.'" *Catawba Ins. Co. v. Smith*, 336 S.C. 33, 38, 518 S.E.2d 291, 293 (S.C. App. 1999) (citing 8 Lee R. Russ & Thomas F. Segalia, Couch on Insurance § 112:37 (3d ed. 1997)). For instance, in *Rakestraw*, the named insured delivered her vehicle to the operator of a filling station solely for the purpose of sale. 238 S.C. 217, 119 S.E.2d 746. The operator in turn delivered the vehicle to an individual solely for the express purpose of having it painted. *Id.* at 224, 199 S.E.2d at 749. The operator testified that he specifically instructed the painter not to use the vehicle for his personal use but to take it directly home, paint it, and return it the following Monday. *Id.* On Saturday, the painter drove his wife to his mother's house in the insured's vehicle, and he had a collision with a train. *Id.* The court found:

> The appellant had express permission from Paul M. McKinney to take the car in question to his home, paint it, and deliver it back to McKinney. He was given express permission to make only two trips in the insured automobile, one was to drive the car to his home, and the other was, after he had painted it, to drive it back

6

> to the filling station where he had obtained possession of it. The appellant was injured at a time when he was operating the insured automobile in violation of the express permission given to him as to its use and operation.

*Id.* at 226, 119 S.E.2d at 750. Accordingly, the court found that the driver was not covered by the omnibus clause of the Allstate insurance policy. *Id.*

As opposed to express consent, implied consent "rests upon proof of circumstances from which an inference of actual permission or consent reasonably arises." *Crenshaw*, 246 S.C. at 554, 144 S.E.2d at 812-813 (citations omitted). As the court in *Crenshaw* stated:

> Generally, in the case of employer and employee, there must be some conduct on the part of the employer sufficient to raise in the mind of the employee a reasonable belief that consent was intended. Consent to the use by an employee of his employer's automobile, outside the scope of his employment, will be implied only if there has been a course of conduct or a practice with the knowledge and acquiescence of the owner, such as would indicate to a reasonable mind that the employee had the right to assume permission under the particular circumstances.

*Crenshaw*, 246 S.C. at 554, 144 S.E.2d at 812-813 (internal citations omitted).

In *Crenshaw*, a new employee was given permission to drive the company truck solely to and from work and not for personal use. 246 S.C. at 552, 144 S.E.2d at 812. The first evening that the new employee drove the truck home, a Thursday night, he was seen driving the truck after work hours in a direction away from his home. *Id.* The owner of the truck did not say anything to the new employee on Friday, and on Saturday the new employee had a fatal accident in the truck. Ultimately, the South Carolina Supreme Court found that the evidence did not establish a course of conduct between the parties suggesting implied consent for the new employee to drive the truck for personal use. *Id.* at 554, 144 S.E.2d at 813.

In the matter *sub judice*, there is no question that Lutzen granted permission to Hernandez to drive the vehicle to and from work. Additionally, Lutzen clearly granted permission to Hernandez

to pick up and drop off fellow employees on his way to and from work when necessary. Thus, the issue before the court is not whether Hernandez had permission to drive to Placido's house on the night of the accident, but whether Hernandez exceeded the scope of Lutzen's permission when he remained at Placido's house for a social visit, which included drinking alcohol.

In its motion for summary judgment, Plaintiff State Farm asserts that "Hernandez, although a permissive driver, was by the time of the accident using the vehicle in a manner totally unauthorized by the owner, Lutzen." (Pl.'s Mot. at 4.) Thus, Plaintiff argues that Hernandez's use of the truck clearly was not within Lutzen's scope of consent.

In contrast, in the Aikens' motion for summary judgment, they assert that Hernandez was acting "within the scope of his employment and within the scope of consent given [to] him" at the time of the accident because "he was in the process of taking home his crew."[5] (Def. Aikens' Mot. at 5.) Likewise, in their motion for summary judgment, Defendants Logan and Lynch argue that Hernandez's use of the vehicle at the time of the accident was entirely within the scope of the permission granted by Lutzen because Hernandez was on his way home after dropping off co-workers. Defendants Logan and Lynch argue: "Entering a house to drink a few beers does not convert subsequent use of the vehicle to personal use." (Defs.' Mot. at 4.) Additionally, Defendants

---

[5] The Aikens seem to confuse the issue of scope of employment (and the doctrine of *respondeat superior*) with the issue of whether Hernandez was acting within the scope of the consent given to him by Lutzen so as to become an additional insured under the State Farm omnibus clause. Although the employment relationship certainly is relevant to the case at hand, the correct inquiry is not whether Hernandez's conduct constitutes a "minor detour" or a "frolic," such that his employer may be found liable pursuant to the doctrine of *respondeat superior*. Rather, the correct inquiry is whether Hernandez's use of the vehicle on the night of the accident satisfies the "conversion" or "strict construction" rule, as applied by South Carolina courts to determine how far a permittee may deviate from a grant of permission and still be covered, and if not, whether Hernandez had implied consent to use the truck at the time of the accident.

8

Logan and Lynch argue that even if Hernandez did violate company policy by consuming alcohol, this did not transform any subsequent use of the vehicle into personal use. The court disagrees.

In Defendant Progressive's memorandum in opposition to Plaintiff's motion for summary judgment, Progressive asserts that State Farm is not entitled to summary judgment because multiple issues of fact exist. For instance, Progressive asserts that there is a factual issue as to whether Hernandez fully comprehended the rules related to the use of the company truck because Hernandez does not speak English.[6] Also, Progressive argues that there is no evidence that Hernandez was impaired by alcohol at the time of the accident.[7] In addition to disagreeing with the Aikens, Logan, and Lynch, the court also disagrees with Progressive.

With regard to the scope of consent given to Hernandez and his understanding of the scope of consent, it is clear that Hernandez understood the rules, regardless of who informed him of them or how he learned them.[8] For instance, several portions of Hernandez's deposition clearly

---

[6] According to his deposition, taken with the aid of a translator, Hernandez is from Mexico and speaks Mixteco, a language similar to Spanish. (Hernandez Depo. at 4,7.)

[7] The court does not agree with Progressive that no evidence exists that Hernandez was impaired by alcohol. For example, in his deposition, Hernandez states that he had two "[k]ind of big" cans of beer before the accident and that the police handcuffed him at the scene and took him to the police station to take a Breathylyzer test. (Hernandez Depo. at 23, 32-35.) Hernandez also states, "I wasn't drinking when I was driving, I drank where I had been before." (Hernandez Depo. at 17.) Hernandez admits that he surrendered his license, paid a $992 fine for a DUI charge, and has to go to classes before he can get his license back. (Hernandez Depo. at 34, 38.)

[8] In his deposition, Mr. Lutzen testified that he never had a conversation with Hernandez about the scope of permission to use the truck, but Mr. Lutzen stated that he asked Honorio Reyes Del Santos ("Rey"), a Spanish-speaking employee, to inform Hernandez of the rules. (Lutzen Depo. at 24.) Rey testified in his deposition that he gave Hernandez a copy of the written rules, which were written in English, and that he explained to him in Spanish what they said. (Rey Depo. at 24.) Although Hernandez's employment file did not contain a signed copy of the rules, Rey said that he informed Hernandez that he could not drink and drive and that he could not use the vehicle for personal use. In Hernandez's deposition, however, he states that Rey only informed him to drive safely and "to get the guys to work, go on and get them to work," but that Rey did not tell him that

demonstrate that he understood that he was supposed to drive the vehicle only to and from work and to pick up and drop off workers, but not to drive the vehicle for personal use. When asked whether he was required to go straight home after dropping other workers off at their homes, Hernandez responded, "Yes." (Hernandez Depo. at 13.) Additionally, when asked about using the vehicle for personal matters, the following questions and answers ensued:

> Q. . . . Were you allowed to use this truck for personal matters, or was it just to work and back?
> A. **To come into work. So sometimes there weren't any other workers to pick up, so it was just for me to use to come and go to work.**
> Q. But nowhere else?
> A. **No.**
> Q. Not to the grocery store --
> A. **No.**
> Q. You weren't allowed, for example, to go to a movie or go out to a nightclub or stop by and go to a doctor visit?
> A. **No, just to work.**

(Hernandez Depo. at 14.) (emphasis in original). A later portion of Hernandez's deposition provides the following:

> Q. If you had [dropped off Nicholas, Placido, and Roberto within a half hour or less], you should have been home by 8:00 p.m. Janurary 7, 2005, correct?
> A. **Yes.**
> Q. And if you had followed the rules placed on you by Lutzen, you should have been home by 8:00 p.m. that evening, shouldn't you?
> A. **Yes, but sometimes we would get home as late as 11:00 or 12:00 because in the cold time of year like October, it takes a long time for the cement to dry.**
> Q. Okay. But on this night work was over at 7:00 or 7:30, and you should have been home within one hour after that, correct?
> A. **Yes.**
> Q. Instead, you stopped at Placido's?

---

he had to take the truck home and not use it for personal use. (Hernandez Depo. at 14.) In any event, when asked whether he "understood from what the Lutzen supervisors told [him] that [he was] to use this truck only for business," and "not to use it for personal use," Hernandez replied, "Yes." (Hernandez Depo. at 42.)

10

|   |   |   |
|---|---|---|
| A. | **Yes.** | |
| Q. | And you were at Placido's for two hours or more? | |
| A. | **Like one or two hours.** | |
| Q. | And during that one and a half, two hours, you drank beer? | |
| A. | **Yes.** | |
| Q. | And then you got back into the Lutzen truck? | |
| A. | **Yes.** | |
| Q. | And that was against Lutzen's rules, correct? | |
| A. | **Yes.** | |

(Hernandez Depo. at 39-40.) (emphasis in original). Furthermore, when asked specifically whether he was on his personal time when he stopped at Placido's, Hernandez responded, "Yeah, that was around 8:00." (Hernandez Depo. at 42.)

Ultimately, the court finds it clear that Hernandez understood Lutzen's rules regarding the use of the vehicle. Moreover, the court finds it clear that pursuant to the "conversion" or "strict construction" rule applied by courts in South Carolina, Hernandez exceeded both the express and implied scope of Lutzen's permission on the night of the accident. Contrary to Defendants' assertions, therefore, the court finds that Hernandez's social visit at Placido's house, coupled with the admitted consumption of alcohol, clearly converted his subsequent use of the vehicle into personal use. Accordingly, Hernandez was not operating the Lutzen vehicle within the omnibus clause in the State Farm policy issued to Lutzen, and therefore, the court finds that Plaintiff State Farm is entitled to summary judgment.

### **CONCLUSION**

It is, therefore, **ORDERED** for the foregoing reasons that Plaintiff State Farm's motion for summary judgment is **GRANTED**. The Aikens' motion for summary judgment, Logan and Lynch's motion for summary judgment, and Defendant Progressive's motion to dismiss are hereby rendered **MOOT**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**July 13, 2006**